# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW MARBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:15-cv-00508 |
| v. ) | |
| ) | Judge Sharp |
| STATE OF TENNESSEE, et al., ) | Magistrate Judge Bryant |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court are Defendant Camelot Care's Motion to Dismiss for Failure to State a Claim (Docket No. 40) ("Motion to Dismiss") and Plaintiff's Motion to Amend/Correct the Complaint (Docket No. 70) ("Motion to Amend"). For the reasons set forth below, the Court will grant in part and deny in part Plaintiff's Motion to Amend and will grant Defendant Camelot Care's Motion to Dismiss.

### I.  Factual & Procedural Background

The following facts are drawn from Plaintiff's Proposed First Amended Complaint. (Docket No. 70-2). Plaintiff Matthew Marble, an adult resident of Michigan who suffers from cognitive and developmental delays, is the biological father of H.S., a minor female, the custody of whom has given rise to this litigation. Plaintiff has neither completed formal education nor obtained his G.E.D. Plaintiff struggles to maintain employment and independent housing, and has previously engaged in substance abuse. Plaintiff fathered H.S., who was born in Tennessee in August 2012 to mother Aren Stuber. Plaintiff alleges that, upon H.S.'s birth, he executed a Voluntary Acknowledgement of Paternity. H.S. lived in Tennessee with Ms. Stuber for the first

1

eight months of her life. During that time, Plaintiff visited his daughter in Tennessee and Ms. Stuber brought H.S. to Michigan on several occasions.

On June 23, 2013, H.S.'s maternal grandmother brought H.S. to the hospital with bruises on her head and torso. H.S. also showed signs of a head injury. The Tennessee Department of Children's Services ("TDCS") filed a successful petition for legal custody in the Juvenile Court of Sumner County and took custody of H.S. after she was released from the hospital. Defendant Camelot Care, a private entity that contracts with TDCS to facilitate the placement of children with licensed foster parents, then placed H.S. in the home of foster parents Dana Davis and Brandon Givens.

TDCS met with Plaintiff Marble in November 2013 regarding the long-term plan for placement of H.S. Plaintiff alleges that those at the meeting developed a permanency plan, which granted him four hours of supervised visitation with H.S. per month. The plan also imposed certain requirements on Plaintiff. According the plan, Plaintiff had to maintain sobriety, submit to drug tests, and establish financial independence through proof of housing. Additionally, the plan included measures to ensure Plaintiff's mental stability. Plaintiff has been unable to meet the terms and conditions of the permanency plan.

TDCS sought the termination of Plaintiff's parental rights in the fall of 2014 and Ms. Stuber voluntarily surrendered her parental rights in November 2014. At present, Plaintiff is embroiled in a complicated series of proceedings in the Juvenile Courts of Sumner and Macon Counties. The Court understands that Plaintiff's parental rights were, in fact, terminated. His appeal of that decision remains pending, but has been stayed, in the Circuit Court for Macon County. Amid these state proceedings, Plaintiff brought suit in federal court in May 2015. Plaintiff claims Defendants violated the Americans with Disabilities Act and Section 504 of the

Rehabilitation Act by failing to accommodate his disability when placing H.S. and seeking termination of his parental rights. More specifically, Plaintiff asserts that his parental rights were improperly terminated absent an "individual assessment that could have led to reasonable accommodations for Plaintiff Marble." (Docket No. 70-2 at ¶ 22.d).

Notably, neither the original Complaint nor the Proposed Amended Complaint contains many specific allegations about Defendant Camelot Care's actions. Instead, Plaintiff seems to allege that Camelot Care acted discriminatorily by facilitating the foster placement of H.S. and by receiving government funding for the same. Plaintiff also alleges that Camelot Care "discriminated against [Plaintiff] by insisting that [he] only have supervised visitation with H.S." (Docket No. 70-2 at ¶ 53).

Initially Plaintiff named as Defendants the State of Tennessee, TDCS, Camelot Care, foster parents Davis and Givens, and a number of other individuals who are government employees and/or who have been involved with the state proceedings. Most of the Defendants have been dismissed pursuant to stipulations of dismissal. (Docket Nos. 51, 65). The only Defendants who remain at this juncture are the State of Tennessee, TDCS, and Camelot Care. Defendant Camelot Care sought to dismiss the claims against it prior to Plaintiff's request to amend and reasserted its previous arguments for dismissal when opposing Plaintiff's Motion to Amend. (Docket Nos. 76, 78). Notably, neither the State of Tennessee nor TCDS has argued that amending the complaint would be futile or moved to dismiss the claims against it.[1]

For the reasons set forth below, the Court agrees that Plaintiff has failed to state a claim against Camelot Care. However, the Court will allow Plaintiff's proposed amendments as to his claims against the State Defendants.

---

[1] Plaintiff's factual allegations include a number of allegations about the involvement of his aunt and uncle, Bobbi and Will DuBoise, Jr. The DuBoises are not parties to this litigation and the Court does not find their involvement to be relevant to the pending motions.

3

## II. Legal Analysis

A. The Rooker-Feldman Doctrine Does Not Apply

As a threshold matter, the Court addresses Defendant Camelot Care's argument that because Plaintiff challenges a state court decision regarding his parental rights, Plaintiff's claims are barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine instructs that federal court review of state court proceedings is jurisdictionally limited to the Supreme Court of the United States by 28 U.S.C. § 1257. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). A closer look at the Sixth Circuit's recent application of the Rooker-Feldman doctrine indicates that its application here would be inappropriate.

As Camelot Care notes, the Sixth Circuit has previously held that the Rooker–Feldman doctrine applies to interlocutory orders and to orders of lower state courts. Pieper v. Am. Arbitration Ass'n, Inc., 336 F.3d 458 (6th Cir. 2003). However, Pieper was rendered two years before the Supreme Court's decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), clarified that the doctrine had narrow and limited application, and Pieper has since been called into question. See Nicholson v. Shafe, 558 F.3d 1266, 1276-77 (11th Cir. 2009) (citations omitted). The Sixth Circuit has noted that "[a]fter Exxon Mobil, it remains an open question in this circuit whether Rooker–Feldman applies where, as here, the plaintiff files suit while the state case is still pending on appeal." Shafizadeh v. Bowles, 476 Fed. App'x 71, 72 (6th Cir. 2012).

As noted above, Plaintiff's state court appeal of the termination of his parental rights remains pending in the Macon County Circuit Court. This Court is inclined to agree with other courts that have addressed this issue since Exxon Mobil and Shafizadah in holding that

"[b]ecause the Sixth Circuit has not decided the specific issue, the Court declines to apply the Rooker–Feldman doctrine in this case." Rigney v. Hesen, No. 3:12-CV-541-R, 2013 WL 3475449, at *4-5 (W.D. Ky. July 10, 2013) (reaching the same conclusion and declining to apply the Rooker-Feldman doctrine where a state court appeal remained pending). Accordingly, the Rooker-Feldman doctrine does not deprive this Court of subject matter jurisdiction.

B. Applicable Standards

   1. *Motion to Amend*

After twenty-one days for the filing of a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." Id. Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Leary v. Daeschner, 349 F.3d 888, 905 (6th Cir. 2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 633 (6th Cir. 2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." Miller v. Calhoun Cnty., 408 F.3d 803, 807 (6th Cir. 2005) (citing Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., 632 F.2d 21, 23 (6th Cir. 1980)). Whether to grant a motion to amend lies within the sound discretion of the district court. Moore v. City of Paducah, 790 F.2d 557, 559 (6th Cir. 1986) (citations omitted).

*2. Motion to Dismiss*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," see Rule 8(a)(2), the statement of the claim must be plausible. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In Iqbal, the Supreme Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To be clear, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Twombly, 550 U.S. at 556. Yet the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing Twombly, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. Id.; see also Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions, however, need not be accepted as true: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

C. Application

Because the allegations against Defendant Camelot Care contained in Plaintiff's Proposed First Amended Complaint ("Proposed FAC") could not survive a motion to dismiss, Plaintiff's Motion to Amend is denied as futile insofar as it asserts claims against Camelot Care.

Plaintiff asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Both statutes generally prohibit discrimination against disabled individuals. Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182. Likewise, the Rehabilitation Act, provides in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

The Sixth Circuit has remarked on the analytical overlap between the ADA and Section 504. See Andrews v. State of Ohio, 104 F.3d 803, 807 (6th Cir. 1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in

7

construing the other.") (citing <u>Wooten v. Farmland Foods</u>, 58 F.3d 382, 385 n.2 (8th Cir. 1995)). To plausibly plead claims under either statute Plaintiff must show: (1) that he or she is a person with a disability; (2) that he or she is otherwise qualified for the benefit or public accommodation from which he or she was excluded; (3) that he or she was denied a benefit or excluded from a public accommodation; and (4) that such exclusion or denial was by reason of the plaintiff's disability. See <u>Doherty v. S. College of Optometry</u>, 862 F.2d 570, 573 (6th Cir. 1988) (setting forth the Rehabilitation Act standard); <u>Morrison v. Comm'r of Special Servs.</u>, No. CV 94-5796, 1996 WL 684426 (E.D.N.Y. Nov. 18, 1996) (setting forth the ADA standard for a parent whose parental rights were terminated). Plaintiff's claims under both statutes are thwarted by the same fatal deficiency: the complete absence of plausible allegations that Camelot Care's conduct was discriminatory.

Plaintiff argues that the Proposed FAC demonstrates that Camelot Care knowingly and intentionally discriminated against Plaintiff. (Docket No. 70-1 at 5). Not so: Plaintiff alleges that Camelot Care acted in a discriminatory way without providing any plausible allegations that Camelot Care's conduct was motivated by or even related to Plaintiff's disability. Plaintiff's Proposed FAC contains precisely the type of conclusory allegations against which the Supreme Court has cautioned.

Although Plaintiff correctly notes that Camelot Care placed H.S. with foster parents, Plaintiff says nothing about how or why proper effectuation of Camelot Care's contractual duties to place children referred by TDCS with foster parents was motivated by or related to his disability. Plaintiff also makes much of the fact that money changes hands when Camelot Care places a child with a foster family, yet Plaintiff simultaneously acknowledges that payments occur in accordance with state statutory mechanisms. Neither does Plaintiff plausibly allege that

8

Camelot Care is at all involved with actually determining Plaintiff's parental rights. At most, Plaintiff notes that the appointed foster parents participated in meetings regarding H.S.'s placement. However, the foster parents are no longer part of this litigation and, once again, Plaintiff fails to connect that participation to his disability. Even the Department of Justice investigation on which Plaintiff pins his hopes, (Docket No. 1-1), lacks any discussion of discrimination by a private foster care placement agency and therefore does not support the claims against Camelot Care.

Simply put, even taking the most charitable view of Plaintiff's allegations, nothing in the Proposed FAC implies that Camelot Care actions were because of or related to Plaintiff's disability. Because the allegations contained in the Proposed FAC do not give rise to an inference of disability-based discrimination, Plaintiff fails to plead a prima facie case against Camelot Care. See Bartell v. Lohiser, 215 F.3d 550, 560 (6th Cir. 2000) (granting summary judgment on a parent's disability discrimination claims against a private foster care agency under the ADA and Section 504 where she failed to allege a "genuine issue of material fact that she was denied custody of William because of her disability, or denied any accommodations because of her disability."). The proposed amended allegations against Defendant Camelot Care would therefore be futile and the claims against it must be dismissed.

As noted above, neither the State of Tennessee nor TDCS has yet moved to dismiss the claims against it or otherwise opposed Plaintiff's Motion to Amend. Without any allegations of bad faith, undue delay, dilatory motive, or futility, the Court sees no reason not to allow the other amendments in Plaintiff's Proposed FAC.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion to Amend will be granted in part and denied in part and Defendant Camelot Care's Motion to Dismiss will be granted. An appropriate order shall enter.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE